**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACK MORRIS and SHERYL A. WEINGARTEN,<br><br>    Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>    Defendants. | Civil Action No. 1:12-cv-01909 (CCC) (JAD)<br><br>**REPORT AND RECOMMENDATION** |

**JOSEPH A. DICKSON, U.S.M.J.**

    The matter comes before the Court upon Defendant C-III Asset Management LLC's (C-III) motion (ECF Nos. 41)[1] to dismiss Plaintiffs' Second Amended Complaint (ECF No. 40) ("SAC") as to C-III for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). The Hon. Claire C. Cecchi, U.S.D.J. referred the motion to this Court for a Report and Recommendation. Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the recommendation of this Court that C-III's motion to dismiss be **GRANTED**.

---

[1] For the sake of clarity, is necessary to briefly address the procedural history for C-III's current motion to dismiss. It appears that C-III first erroneously submitted its Notice of Motion as a "Notice" rather than a "Motion." (ECF No. 41). C-III also erroneously submitted its Memorandum of Law as a "Motion." (ECF No. 44). At the direction of the Clerk's Office, C-III then resubmitted both its Notice of Motion (ECF No. 46) and supporting Memorandum (ECF No. 45). As it appeared from the docket, however, that C-III had filed a new motion to dismiss in addition to its pending jurisdictional motion, the Hon. Claire C. Cecchi, U.S.D.J. administratively terminated the latter-filed motion. (See Jan. 25, 2013 Order, ECF No. 51). In fact, both motions are identical. As ECF No. 46 has already been terminated, however, this Court will address the application contained in ECF No. 41.

I. **BACKGROUND.**

This matter arises out of Plaintiffs' execution of an Indemnity and Guaranty Agreement (the "Guaranty") in favor of Merrill Lynch Mortgage Lending, Inc. (SAC ¶ 5). Plaintiffs executed the Guaranty in connection with a mortgage (obtained by non-party JSM at College Pointe, Ltd. LLP ("JSM")) for an apartment complex and related property commonly known as Phases II and III of the Lakes at College Point in Fort Meyers, Florida (the "Property"). (Id. ¶ 6). It appears that Merrill Lynch assigned its interest in JSM's mortgage and related agreements to an entity (the Registered Holders of Merrill Lynch Mortgage Trust 2004-BPC1, Commercial Mortgage Pass-Through Certificates, Series 2004-BPC1), for which Defendant Wells Fargo, N.A. serves as a Trustee. (Aff. of Andrew Ullrich, Ex. B, ECF No. 54-1 at 1; SAC ¶ 2). Wells Fargo retained C-III as a "servicer", (SAC ¶¶ 7, 18; C-III Mov. Br., ECF No. 44 at 11), and, in that role, C-III performed certain unspecified functions with regard to JSM's mortgage. (Id.).

JSM defaulted on its mortgage obligations in or about October 2010. (Aff. of Andrew Ullrich, Ex. B, ECF No. 54-1 at 2). While the parties' submissions do not disclose whether JSM ever cured that default, it is clear that Wells Fargo commenced foreclosure proceedings in connection with the Property, and JSM opposed. (SAC ¶¶ 8-9).

Under the Guaranty, Plaintiffs became personally obligated to pay any amounts in connection with JSM's "'misapplying (under the lease, the Mortgage or any other agreement) or misappropriating any Rents, security deposits or other refundable deposits paid to or held by or on behalf of Lender." (Id. ¶ 13). Wells Fargo took the position that JSM's expenditure of funds in defending the foreclosure action constituted a misappropriation of rents and that Plaintiffs were therefore obligated under the Guaranty to repay all such amounts. (Id. ¶ 14). Specifically, Plaintiffs allege that "[C-III] and/or Wells [Fargo] caused Peter H. Levitt, Esq. of Shutts &

2

Bowen, LLP to deliver a January 27, 2012 letter [(the "Demand Letter")] which stated, among other things, 'Demand is hereby made upon you under your Guaranty for the immediate payment to [Wells] . . . in the amount of $193,007.54.'" (SAC ¶ 11).

Plaintiffs' commenced this action seeking a declaration requiring Defendants to collectively withdraw the Demand Letter and otherwise cease their efforts to collect the amounts described therein. (Id. ¶¶ 28, 32). Defendant C-III removed on the basis of complete diversity, (ECF No. 1), and has now filed the instant motion, pursuant to Fed. R. Civ. P. 12(b)(2), seeking dismissal of all claims against it.

## II. THE PARTIES' ARGUMENTS

Defendant C-III contends that it lacks such "minimum contacts" with New Jersey that would subject it to jurisdiction within this State. Specifically, C-III argues that the Court may not exercise "general jurisdiction" because C-III, a Delaware entity with its principal place of business in Texas, does not maintain a New Jersey office, operate any businesses in New Jersey, own any New Jersey real estate, maintain any bank accounts in this State, or otherwise have the sort of systematic and continuous contacts that would render jurisdiction appropriate. (C-III Mov. Br., ECF No. 44, at 3). C-III also contends that it is not subject to specific jurisdiction, as none of the events relevant to JSM's mortgage or the formation of the Guaranty, which serves as the basis of Plaintiffs claims, occurred in New Jersey. (Id. at 4-5). C-III further argues that the Demand Letter, which was sent by counsel who explicitly identified themselves as representing Wells Fargo, and which requested that payment be made to Wells Fargo, and did not implicate C-III. (Id. at 5). C-III claims that it is simply a loan servicer for Wells Fargo, and that it is neither the lender nor a principal in this matter. (Id.). Finally, C-III argues that, to the extent it

3

placed telephone calls to Plaintiffs in New Jersey, such contacts would not be sufficient to support specific jurisdiction. (Id. at 5-7).

In opposing C-III's motion, Plaintiffs do not explicitly argue that C-III is subject to general jurisdiction in New Jersey. Rather, Plaintiffs point out, in passing, that the Wall Street Journal has reported on C-III's "prominent role in the sale of the Pier Shops at Ceasars in Atlantic City, New Jersey, a landmark, high profile property in that part of the State." (Pl. Br., ECF No. 54, at 1). Plaintiffs ostensibly make that point to suggest that general jurisdiction is appropriate.

Plaintiffs' primary contention is that, because C-III allegedly directed its counsel to send the Demand Letter on behalf of Wells Fargo, and because that letter "has given rise to Plaintiffs' claims", C-III is subject to specific jurisdiction. (Id. at 3). Plaintiffs argue that "by directing that a demand for payment be sent to the New Jersey Plaintiffs, C-III should have anticipated litigation in this State." (Id.).

### III. DISCUSSION AND ANALYSIS

#### a. Legal Standard

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). "Under New Jersey's analog to a long-arm statute, N.J. Court Rule 4:4-4, a district court may assert personal jurisdiction over nonresidents to the extent permitted by the Due Process Clause of the Fourteenth Amendment." Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012). More specifically, "[a] district court may exercise in personam jurisdiction over a nonresident so long as the defendant has 'certain minimum contacts with [the forum] such that the maintenance of

4

the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe, 566 F.3d at 334. "General jurisdiction results from, among other things, 'systematic and continuous' contact between a non-resident defendant and the forum state. Spuglio v. Cabaret Lounge, 344 F. App'x 724, 725 (3d Cir. 2009) (quoting Int'l Shoe Co., 326 U.S. at 320). Specific jurisdiction, on the other hand, "is proper only when the 'cause of action arises out of [the] defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum.'" Abel v. Kirbaran, 267 F. App'x 106, 108 (3d Cir. 2008) (quoting Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001)).

The plaintiffs bear "the ultimate burden . . . to demonstrate the existence of jurisdiction by a preponderance of the evidence." Lasala v. Marfin Popular Bank Pub. Co., 410 F. App'x 474 at 476 (3d Cir. 2011). Where, as here, the Court does not hold an evidentiary hearing prior to resolving the personal jurisdiction issue, "a prima facie standard, under which the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiffs favor, applies." Id. The Court must still, however, examine any evidence presented with regard to disputed factual allegations. See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155-56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence."). Finally, a plaintiff

may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction; "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." Patterson, 893 F.2d at 604 (internal citations omitted).

### b. General Jurisdiction

"A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." Metcalfe, 566 F.3d at 334. Here, the Court finds that Plaintiffs have failed to establish, by a preponderance of the evidence, that C-III has engaged in such "continuous and systematic" contacts with New Jersey as to merit a finding of general jurisdiction.

Most of the facts concerning C-III's contacts with New Jersey are not in dispute. The parties agree that C-III is a Delaware entity that maintains its principal place of business in Texas. (SAC ¶ 3; Dec. of Jenna Vick Unell, ECF No. 44-1 ("Unell Dec."), ¶1). Plaintiffs have not challenged C-III's representations that C-III does not own any real property, maintain any bank accounts or operate any offices in New Jersey. (Unell Dec. ¶ 3).[2] Additionally, while C-III employee Clifford Ogle, a Texas resident, admits to having engaged in certain e-mail and telephone correspondence with Plaintiff Jack Morris and other representatives of JSM, there is nothing in the record establishing that those representatives were located in New Jersey at the time. (Dec. of Clifford Ogle, ECF No. 44-2, ¶ 7) ("The persons I e-mailed or spoke with, including Jack Morris, may have been in New Jersey at the time of the communication, but I do

---

[2] C-III volunteered that its parent company, C-III Capital Partners, LLC, has one employee who resides in New Jersey and works from home. (Unell Dec. ¶ 3). C-III's parent's contacts, however, cannot be used as a basis for jurisdiction over C3, as there is no allegation, let alone evidence, suggesting that C3 and its parent operate as a "single entity." Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp., 27 Fed. App'x 94, 98 (3d Cir. 2002).

6

not know that."). Those contacts do not, therefore, weigh in favor of jurisdiction. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312 (3d Cir. 2007). ("[C]ontacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself.").

The parties do, however, dispute whether, and to what extent, C-III conducts business in New Jersey. (Compare Unell Dec. ¶ 3 ("C-III . . . does not operate any business located in New Jersey") with Pl. Br., ECF No. 54, at 1 ("C-III does, in fact . . . conduct significant business in New Jersey, as evidenced in their prominent role in the sale of the Pier Shops at Ceasars in Atlantic City.")). Plaintiffs' only evidence regarding C-III's "prominent role" in Atlantic City comes in the form of a Wall Street Journal article annexed to Plaintiffs' attorney's certification. (ECF No. 54-1, at 27-29). That article states that, in 2010, Taubman Centers, Inc., a retail landlord, gave C-III (which had been managing Taubman's mortgage) control of a commercial property in Atlantic City, and that C-III thereafter sought to sell that property. (Id.). The article is plagued by a host of evidentiary problems, however, and it would be inappropriate for the Court to consider it on this application. Most fundamentally, while Plaintiffs' counsel has submitted the article to the Court as part of his certification, he does not profess to have any personal knowledge regarding its subject matter. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Jarvis v. A & M Records, 827 F. Supp. 282, 286-87 (D.N.J. 1993) (disregarding, on a motion for summary judgment, all portions of attorney certifications not based on personal knowledge). It is most certainly not the sort of "competent evidence" a plaintiff must adduce to prevail on a contested jurisdiction motion. Patterson, 893 F.2d at 603-04. Even if the article did have evidentiary value, it provides no detail regarding the extent of C-

7

III's role regarding the Atlantic City property or the type or frequency of C-III's contacts with New Jersey.

The Court also notes that Plaintiffs do not suggest that they require additional discovery regarding C-III's contacts with New Jersey. Instead, Plaintiffs infer (but never explicitly argue) that an exercise of general jurisdiction would be appropriate based on the vague, unsworn information contained in the Wall Street Journal article attached to its counsel's certification. (Pl. Br., ECF No. 54, at 1). As noted, that article does not constitute competent evidence of anything, let alone provide meaningful insight into the extent of C-III's contacts with New Jersey.

In short, Plaintiffs have shown only that C-III's counsel sent two letters to Plaintiffs in New Jersey, on behalf of Wells Fargo, discussing JSM and its guarantors' alleged obligations to Wells Fargo. (See Aff. of Andrew Ullrich, Ex. B, ECF No. 54-1 (December 20, 2010 letter noting that JSM had defaulted under its mortgage obligations and demanding that all outstanding amounts be remitted to "Midland Loan Services" in Overland Park, Kansas); SAC ¶¶ 11-12 (January 27, 2012 letter demanding that Plaintiffs pay Wells Fargo $193,007.54 allegedly owed under the Guaranty). It appears that law firm that sent the letters represented both Wells Fargo and C-III, and nothing in the record clarifies whether C-III, as opposed to Wells Fargo, directed the firm to send the letters. In any event, even assuming that C-III expressly directed the attorneys to send both letters, those two communications are not, in themselves, sufficient to support an exercise of general jurisdiction. See Sathianathan v. Pac. Exch., Inc., 248 F. App'x 345, 347 (3d Cir. 2007) ("The only contacts the individual defendants made with the forum state in this case were a handful of telephone calls, e-mails, and letters apprising appellant, a New Jersey resident, of the status of the arbitration. Such 'minimal communication between the

8

defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of that state's court system.'") (internal citations omitted).

### c. Specific Jurisdiction

"Specific jurisdiction exists if the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" Metcalfe, 566 F.3d at 334 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotations omitted)). Not just any activities will suffice, however. Here, Plaintiffs seek a declaration regarding their rights and obligations under the Guaranty. "In a contract case, such as this one, [a plaintiff] must establish that [the defendant's] contacts with the forum were instrumental in either the formation or the breach of the contract." Control Screening, LLC, 687 F.3d at 167.

Plaintiffs contend that "C-III retained Counsel and then endeavored to extract payment from the New Jersey Plaintiffs by sending notice of an alleged debt into New Jersey . . . Such endeavor has given rise to Plaintiffs' claims." (Pl. Br. At 3). This Court disagrees. Plaintiffs' claims revolve around the Guaranty and, more specifically, whether Plaintiffs are personally liable under that document for allegedly using rents earned at the Property to fund JSM's defense in a foreclosure proceeding taking place in Florida. Plaintiffs do not contend that C-III was involved in the negotiation or execution of the Guaranty or that it has any legal rights or obligations thereunder. As such, Plaintiffs cannot establish that the January 27, 2012 letter was "instrumental in either the formation or the breach" of the Guaranty. Control Screening, LLC, 687 F.3d at 167. Rather, C-III merely directed its attorneys (who were also attorneys for Wells

Fargo) to communicate Wells Fargo's interpretation of that document. That sort of ministerial function is simply not a sufficient legal basis for an exercise of specific jurisdiction.

Thus, it is this Court's recommendation that Plaintiffs' Second Amended Complaint for Declaratory Relief be dismissed, without prejudice, as to Defendant C-III.

## IV. <u>CONCLUSION</u>

It is the recommendation of this Court that C-III's Motion to Dismiss (ECF No. 41) be granted, and that Plaintiffs' claims against C-III be dismissed without prejudice to Plaintiffs' right to bring them in an appropriate jurisdiction.

JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Claire C. Cecchi, U.S.D.J.